1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CALVIN CHOYCE,                          No.  2:20-cv-0608 KJN P

12              Plaintiff,

13        v.                                 ORDER AND FINDINGS AND
                                             RECOMMENDATIONS
14   N. RADASA,

15              Defendant.

16

17   I.  Introduction

18        Plaintiff is a state prisoner, proceeding without counsel.  Plaintiff seeks relief pursuant to

19   42 U.S.C. § 1983, and is proceeding in forma pauperis.  Defendant Radasa's motion for summary

20   judgment is before the court.  As discussed below, the motion should be granted.

21   II.  Plaintiff's Allegations

22        In his verified complaint, plaintiff alleges that defendant Radasa on several occasions

23   intentionally denied plaintiff his PRN medication for his chronic chest pains and high blood

24   pressure, causing plaintiff's condition to worsen, subjecting him to a possible stroke or heart

25   attack, in violation of the Eighth Amendment.  Specifically, plaintiff alleges that on July 5, 2019,

26   defendant reported to C-facility clinic to access medical treatment for chest pains, and obtain

27   water for his C-Pap machine.  When he asked defendant for his PRN, defendant refused to give

28   plaintiff his PRN, and he was wheeled back to his housing unit.  "Shortly thereafter," plaintiff

attended his medical appointment with his primary care provider, who prescribed plaintiff
medication to decrease his pain.  (ECF No. 9 at 6.)

III.  Undisputed Facts ("UDF")

For purposes of summary judgment, the undersigned finds the following facts are
undisputed:

1.  Plaintiff is an inmate in the custody of the California Department of Corrections and
Rehabilitation ("CDCR").

2.  Plaintiff was incarcerated at Mule Creek State Prison ("MCSP") at all times relevant to
this lawsuit.

3.  Plaintiff is not a medical doctor, nurse, or physician's assistant.

4.  Plaintiff has had no formal medical training.

5.  Defendant Radasa is licensed by the State of California as a Licensed Vocational Nurse
("LVN"), and in July 2019, the relevant time in this lawsuit, was employed by the CDCR at
MCSP.

6.  As an LVN at MCSP, defendant's duties were to administer to inmate-patients their
medication pursuant to an existing physician order, administering such medications under the
conditions and within the time frame and in the dosages as ordered by the physician.  Defendant
could not deviate from the physician orders; any changes must be ordered by a physician.
Defendant's only other duty was to respond to non-life-threatening medical emergencies.

7.  Defendant administered to inmates medication ordered by a doctor, not by defendant.

8.  The incidents alleged herein took place at the C Yard Medical Clinic's medication
window.

9.  Because defendant administered physician-ordered medication to plaintiff, defendant
was familiar with the medications he was on in 2019.

10.  Plaintiff suffers from chronic chest pain (angina) and has high blood pressure.  The
management of these conditions is through access to medication and monitoring his blood
pressure.

////

2

11.  In order for plaintiff to receive medication for high blood pressure, he was required to have his blood pressure taken beforehand.

12.  Plaintiff's medications were monitored and administered in strict compliance with physician's orders, including dosage and timing of administration.

13.  On at least one occasion, plaintiff had nitroglycerin kept on his person ("KOP"), meaning he could take it as needed.  However, plaintiff took too many nitroglycerin pills causing him to go man-down due to dangerously low blood pressure.  As a result, the nitroglycerin was disallowed as KOP because of concerns of self-harm.

14.  Plaintiff's medication and its administration was closely and carefully monitored in strict compliance with physician orders because of his history of medication abuses.

15.  Defendant declares that there were many occasions plaintiff would come for medication but leave if he thought defendant was taking too long.

16.  For his heart condition, plaintiff was prescribed nitroglycerin for angina and furosemide, a diuretic medication used to reduce extra fluid in the body (edema) caused by conditions such as heart failure.

17.  For high blood pressure, plaintiff's medication included carvedilol and Lisinopril. Plaintiff was also prescribed oxcarbazepine (Trileptal) for seizures.

18.  With the exception of nitroglycerin, taken only for angina, plaintiff's other medications were to be taken on a scheduled and regular basis.

19.  At the time relevant herein, plaintiff was prescribed pro re nata ("PRN") medication. PRN medication refers to the administration of medication that is not scheduled, but rather is taken as needed.  However, even if prescribed PRN, some medication was required to be taken at appropriate time intervals as ordered by a physician.  Therefore, if plaintiff requested Tylenol too close in time to his prior dose, defendant could not administer it.

20.  For PRN medication, plaintiff had the right to request it and the right not to request it. If requested, the medication had to be requested during the designated times and given in dosages and under conditions prescribed by plaintiff's physician.  Only a physician could change the conditions, timing, and dosage of plaintiff's medications.

3

21.  At the time relevant herein, including July of 2019, plaintiff's PRN medications consisted only of a laxative (ducosate or Colace), and Tylenol.

22.  The only specific date provided in plaintiff's amended complaint is July 5, 2019, the date plaintiff claims defendant denied plaintiff his PRN medication.  (ECF No. 9 at 5.)

23.  At his deposition, plaintiff claimed that in addition, defendant refused plaintiff his PRN medication on June 27, 2019.  (Pl.'s Dep. at 49; 52.)

24.  Plaintiff testified that sometime in February of 2019, he went with chest pains, having already taken nitroglycerin, and that defendant would not help him for his chest pains.  (Pl.'s Dep. at 52.)

25.  Plaintiff also testified that on March 3, 2019, defendant denied him all of his medications, not just his PRN medications.  (Pl.'s Dep. 48; 53.)

26.  Finally, plaintiff also testified that defendant would not give plaintiff his blood pressure medication from February 28, 2019, until March 3, 2019.  (Pl.'s Dep. at 51.)

27.  Plaintiff confirmed that July 5, 2019, June 27, 2019, March 3, 2019, and sometime in February 2019 are the only dates at issue.  (Pl.'s Dep. at 52-53.)

IV.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[1]

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

---

[1]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

5

1    trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

2    the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

3    Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

4    amendments).

5          In resolving a summary judgment motion, the court examines the pleadings, depositions,

6    answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

7    Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

8    255.  All reasonable inferences that may be drawn from the facts placed before the court must be

9    drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

10   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

11   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

12   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

13   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

14   some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not

15   lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

16   Matsushita, 475 U.S. at 586 (citation omitted).

17         By notice filed May 26, 2021 (ECF No. 30 at 2), plaintiff was advised of the requirements

18   for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See

19   Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d

20   409 (9th Cir. 1988).

21   V.  Legal Standard for Eighth Amendment Claim

22         The Eighth Amendment is violated only when a prison official acts with deliberate

23   indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th

24   Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th

25   Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  To state a claim a plaintiff "must

26   show (1) a serious medical need by demonstrating that failure to treat [his] condition could result

27   in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the

28   defendant's response to the need was deliberately indifferent."  Wilhelm v. Rotman, 680 F.3d

1113, 1122 (9th Cir. 2012) (citing <u>Jett</u>, 439 F.3d at 1096).  "Deliberate indifference is a high legal

standard," <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a

purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm

caused by the indifference."  <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096).  The

requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of

due care.  <u>Snow</u>, 681 F.3d at 985 (citation and quotation marks omitted).

　　　　"Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of

action."  <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980) (citing <u>Estelle v.</u>

<u>Gamble</u>, 429 U.S. 97, 105-06 (1976)).

　　　　Further, "[a] difference of opinion between a physician and the prisoner -- or between

medical professionals -- concerning what medical care is appropriate does not amount to

deliberate indifference."  <u>Snow</u>, 681 F.3d at 987 (citing <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th

Cir. 1989)).  Rather, a plaintiff is required to show that the course of treatment selected was

"medically unacceptable under the circumstances" and that the defendant "chose this course in

conscious disregard of an excessive risk to plaintiff's health."  <u>Snow</u>, 681 F.3d at 988 (quoting

<u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1996)).  In other words, so long as a defendant

decides on a medically acceptable course of treatment, his actions will not be considered

deliberately indifferent even if an alternative course of treatment was available.  <u>Id.</u>

VI.  <u>Discussion</u>

　　　　As argued by defendant, plaintiff failed to provide a declaration, sworn under penalty of

perjury, despite being provided notice under <u>Rand</u>.  Although he titles two pages of his opposition

as a "declaration," he did not sign the document under penalty of perjury.  (ECF No. 33 at 3, 9.)

Thus, the court considers plaintiff's opposition as argument only; his verified complaint addresses

only the July 5, 2019 incident.  The court also considers plaintiff's deposition testimony to the

extent such testimony is within plaintiff's personal knowledge.

　　　　For purposes of summary judgment, defendant does not dispute the "serious medical

need" component of the Eighth Amendment test.  (ECF No. 30-2 at 13 n.1.)  Plaintiff suffers from

chronic chest pain and high blood pressure.

A. Plaintiff's Amended Complaint

Plaintiff alleges that defendant Radasa has on several occasions intentionally denied plaintiff his PRN medication for his chronic chest pains and high blood pressure, causing plaintiff's condition to worsen, subjecting him to a possible stroke or heart attack, in violation of the Eighth Amendment. The sole incident identified in his pleading occurred on July 5, 2019, on which date plaintiff claims that he was denied PRN medications, which caused plaintiff's condition to worsen, subjecting him to a possible stroke or heart attack. (ECF No. 9 at 5-6.)

However, such claim fails because on July 5, 2019, plaintiff's PRN medications were a laxative (ducosate or Colace), and Tylenol, neither of which was prescribed for his heart condition or blood pressure. Moreover, plaintiff's own pleading confirms that shortly after defendant allegedly denied plaintiff his PRN medication, his primary care provider gave plaintiff medication for his pain. (ECF No. 9 at 6.) Thus, absent evidence to the contrary, such brief delay is insufficient to rise to the level of an Eighth Amendment violation.

In his deposition, plaintiff testified that he presented at the window "in the evening of July 5, 2019," because he was having chest pains, but when he asked for Tylenol, defendant refused. (Pl.'s Dep. at 24.) However, the medication administration record confirms that defendant gave plaintiff Tylenol on July 5, 2019, at 17:30 PST (5:30 p.m.), the same time she administered his carvedlilol, docusate, furosemide and lisinopril. (ECF No. 30-3 at 7 (Ex. A).) Therefore, sometime "in the evening" of July 5, 2019, would have been too soon for defendant to provide plaintiff with additional Tylenol. Plaintiff apparently believed that because his Tylenol was "PRN" he could get it whenever he asked. However, defendant adduced evidence that even PRN medication must be provided within the specifics of the physician's orders, and she could not administer it if it was outside designated times. While the physician was authorized to increase plaintiff's pain medication, defendant was not. Plaintiff adduced no evidence to the contrary. Thus, even assuming defendant did refuse to provide plaintiff additional Tylenol on the evening of July 5, 2019, the evidence shows that such refusal was based on the physician's orders, not because defendant was acting with a culpable state of mind. Accordingly, defendant is entitled to summary judgment on this claim.

1    B. <u>Additional Incidents Raised in Plaintiff's Deposition</u>

2        In his deposition, plaintiff confirmed that in addition to the July 5, 2019 date discussed

3    above, the only other dates at issue are:  June 27, 2019, March 3, 2019, and sometime in

4    early February 2019, and that he was not given blood pressure medication from February 28,

5    2019, until March 3, 2019.  (Pl. Dep. at 51, 52-53.)

6        <u>June 27, 2019</u>

7        Plaintiff claimed that on June 27, 2019, he went to the medication window and asked

8    defendant for Tylenol, but that defendant informed plaintiff he could only have it at a certain time

9    of day and denied plaintiff the Tylenol.  (Pl.'s Dep. at 33.)  Plaintiff could not recall the time,

10   only that it was p.m. meds.  (Pl.'s Dep. at 33.)  The medication administration record reflects that

11   plaintiff was given Tylenol by LVN Agpad at 6:57 a.m. on June 27, 2019.  At 17:34 hours (5:34

12   p.m.), defendant administered to plaintiff his regular medications but did not administer Tylenol.

13   (ECF No. 30-3 at 9-10 (Ex. B).)  The record does not reflect that plaintiff asked for Tylenol, and

14   defendant declares that had plaintiff asked for Tylenol and it was within the time frame specified

15   by his doctor, defendant would have provided the Tylenol.

16       In his unverified opposition, plaintiff merely states that defendant denied plaintiff

17   medication on June 27, 2019.  (ECF No. 33 at 8.)  But he fails to set forth any facts or evidence

18   that the alleged denial of medication was due to defendant's deliberate indifference.  Rather, his

19   own testimony confirms that defendant informed plaintiff he could only have it at a certain time

20   of day.  Such response does not evidence deliberate indifference.  As noted above, even PRN

21   medication must be administered according to physician's orders, at the designated time frame.

22   Plaintiff fails to demonstrate that a material dispute of fact exists as to the June 27, 2019 incident.

23       But even assuming, arguendo, that defendant refused to give plaintiff Tylenol on June 27,

24   2019, such refusal on one occasion is insufficient to rise to the level of an Eighth Amendment

25   violation, particularly in the absence of evidence demonstrating that defendant acted with a

26   culpable state of mind.

27   ////

28   ////

<u>March 3, 2019</u>

Plaintiff also testified that on his way to dinner, he stopped at the medication line, but that defendant refused to give plaintiff both his regular and PRN medication because plaintiff did not come at the same time as diabetic inmates come to get their shots.  (Pl.'s Dep. at 48.)

The medication administration record reflects that on March 3, 2019, at 07:38 PST (7:38 a.m.), plaintiff was provided carvedilol, furosemide and Lisinopril by LVN Bhinder.  (ECF No. 9 at 12 (Ex. C).)  Defendant declares that at 20:16 PST (8:16 p.m.) on March 3, 2019, defendant did not administer carvedilol, furosemide or Lisinopril because plaintiff did not show within the ordered time parameters for his medications, as shown by the medical assessment record under "Admin Details: (Not Done) No Show/No Barriers" entry.  (ECF No. 9 at 4, 12.)  At 20:28 PST (8:28 p.m.), defendant did administer to plaintiff Oxcarbazepine (Trileptal) and aspirin as ordered by his physician.  (ECF No. 9 at 4, 13.)

Plaintiff failed to rebut defendant's evidence with competent evidence showing defendant did not provide plaintiff with medication because plaintiff did not show.  Therefore, defendant is entitled to summary judgment.

<u>Early February 2019</u>

In his deposition, plaintiff also claimed that sometime in early February, he asked for some help for his pain because the nitroglycerin did not stop the chest pain.  He went to the window and told defendant that plaintiff was having chest pains.  (Pl.'s Dep. at 43, 46.)  At the time, plaintiff had nitroglycerin KOP.  (<u>Id.</u> at 46.)  Plaintiff admitted he took three nitroglycerin pills within 45 minutes of standing at the window.  (<u>Id.</u>)  Plaintiff also admitted he did not ask defendant for his PRN medication, Tylenol.  (<u>Id.</u>)

Because petitioner could not recall a specific date, defendant could not respond with specifics as to the treatment on a specific date.  However, defendant declares that if plaintiff had taken too many nitroglycerin, this incident likely was one where plaintiff went man-down because the overdose of nitroglycerin would have caused his blood pressure to drop dangerously low.  (ECF No. 30-3 at 4.)  Defendant declares that "[i]f a physician did not order medication to be administered to [plaintiff] subsequent to his nitroglycerin overdose, [defendant] could not

1    disburse any medication to [plaintiff]."  (ECF No. 30-3 at 4.)  Plaintiff did not rebut such

2    evidence.

3           As noted above, plaintiff's verified pleading did not address this incident, and it is

4    undisputed that plaintiff did not ask for PRN medication on this occasion.  In his opposition,

5    plaintiff failed to provide specific details concerning this incident, simply arguing that defendant

6    "refused to help plaintiff causing plaintiff's condition to worsen."  (ECF No. 33 at 6.)  However,

7    it is undisputed that defendant's job duties were to administer medication prescribed by

8    physicians and to respond to non-life-threatening medical emergencies.  It is undisputed that if

9    plaintiff's doctor had not ordered medication to address an overdose of nitroglycerin, defendant

10   could not provide such medication to plaintiff.  Plaintiff provided no evidence that his doctor had

11   written such a prescription.  Moreover, due to plaintiff's heart condition, it can reasonably be

12   inferred that going man down with a dangerously low blood pressure could be life-threatening.

13   Plaintiff offered no evidence that defendant, an LVN, was authorized to treat plaintiff in such

14   situation.  Moreover, although plaintiff argues that defendant's alleged refusal caused plaintiff's

15   condition to worsen, he offers no competent evidence in support; indeed, he fails to demonstrate

16   that his condition was worsened by defendant's alleged refusal rather than as a result of taking

17   three nitroglycerin pills within 45 minutes.

18          Because plaintiff offered no competent evidence to demonstrate that defendant was

19   deliberately indifferent in early February 2019, defendant is entitled to summary judgment.

20              No Blood Pressure Medication

21          Finally, plaintiff testified that he was not given blood pressure medication from February

22   28, 2019, until March 3, 2019.  (Pl. Dep. at 51.)  As set forth above, such claim was not included

23   in his pleading.  Rather, his claim was that defendant failed to provide plaintiff with his PRN

24   medication for his chronic chest pains and high blood pressure.  At that time, plaintiff's PRN

25   medications consisted only of a laxative (ducosate or Colace), and Tylenol.

26          Nevertheless, plaintiff failed to demonstrate defendant was deliberately indifferent to

27   plaintiff's need for blood pressure medication during this time frame.  The certified medical

28   assessment record shows the following:

On February 28, 2019, at 07:32 PST (7:32 a.m.), plaintiff received carvedilol from LVN M. Laffoon.  (ECF No. 30-3 at 15; ECF No. 33 at 11.)

On February 28, 2019, at 21:21 PST (9:21 p.m.), "Not done, No Show/No Barriers." (ECF No. 30-3 at 15; ECF No. 33 at 11.)  Plaintiff did not receive his blood pressure medications Lisinopril and carvedilol.  (ECF No. 30-3 at 15.)  Performed by defendant.  (Id.)

On March 1, 2019, at 08:30 PST (8:30 a.m.), "not done, patient refused;" "refused to have blood pressure taken before med line, then refused to wait until after med line to have blood pressure taken to receive meds."  (ECF No. 30-3 at 16.)  Plaintiff did not receive his blood pressure medications Lisinopril and carvedilol; performed by LVN T. Erickson.  (Id.)

On March 1, 2019, at 19:27 hours (7:27 p.m.), defendant administered the Lisinopril and carvedilol to plaintiff.  (ECF No. 30-3 at 17.)

On March 2, 2019, at 07:52 hours (7:52 a.m.), "not done, patient refused;" "I/P refused to wait for b/p check," performed by LVN T. Erickson.  (ECF No. 30-3 at 18.)

On March 2, 2019, at 19:52 hours (7:52 p.m.), defendant administered the Lisinopril and carvedilol to plaintiff.  (ECF No. 30-3 at 18-19.)

On March 3, 2019, at 07:38 PST (7:38 a.m.), LVN Bhinder administered the Lisinopril and carvedilol to plaintiff.  (ECF No. 30-3 at 12.)

On March 3, 2019, at 20:16 hours (8:16 p.m.), "Not done, No Show/No Barriers."  (ECF No. 30-3 at 12.)  Performed by defendant.  (Id.)  Plaintiff did not receive his blood pressure medications.

In addition, defendant provided a declaration denying that defendant would not give plaintiff his blood pressure medication from February 28, 2019, to March 3, 2019, and stating that she did not at any time deny plaintiff medication that was ordered by a physician, so long as it was within the conditions, time frame, and dosage ordered by the physician.  (ECF No. 30-3 at 4, 5.)  Indeed, the medical assessment record confirms that plaintiff did receive blood pressure medication during this time frame.

There were only two occasions attributable to defendant where plaintiff did not receive his blood pressure medications -- the evenings of February 28, 2019, and March 3, 2019.  On both

12

1   occasions the medical assessment record confirms that plaintiff did not receive his blood pressure

2   medications from defendant on the evenings of February 28, 2019, and March 3, 2019, because

3   plaintiff did not show for his medications.

4          Plaintiff argues that a "no show" can also mean that defendant refused to give plaintiff his

5   medication.  (ECF No. 33 at 8.)  But plaintiff's conclusory and self-serving statement is

6   unsupported by competent evidence.  The fact that the medical assessment record's use of the

7   terms "no show" means that the patient did not show up to receive medications is supported by

8   defendant's declaration confirming that plaintiff did not show up on such dates for his

9   medication, as set forth above.  Plaintiff did not rebut this evidence with competent evidence.

10  Therefore, defendant is entitled to summary judgment.

11         For all of the above reasons, the undersigned finds that defendant is entitled to summary

12  judgment.

13  VII.  Orders and Recommendations

14         Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign

15  a district judge to this case; and

16         IT IS RECOMMENDED that:

17         1.  Defendant's motion for summary judgment (ECF No. 30) be granted; and

18         2.  This action be terminated.

19         These findings and recommendations are submitted to the United States District Judge

20  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

21  after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

24  objections shall be filed and served within fourteen days after service of the objections.  The

25  parties are advised that failure to file objections within the specified time may waive the right to

26  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

27  Dated:  October 19, 2021

    /choy0608.msj.med

28

1

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE